FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 AUG 30  PM 4: 05

MARGARET BOTKINS, CLERK
CHEYENNE

John A. Sundahl, WSB# 5-1244
Patrick M. Brady, WSB# 7-5494
Sundahl, Powers, Kapp & Martin, L.L.C.
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY 82003-0328
(307)632-6421
(307)632-7216 facsimile
jsundahl@spkm.org
pbrady@spkm.org
*Attorneys for Plaintiffs Justin Lewis and
Trinity Lewis*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| JUSTIN LEWIS and TRINITY LEWIS, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | Case No. 21 CV 160 - F |
| ) | |
| LEGION RIG SERVICES, LLC; ) | |
| ENTREC CRANES AND HEAVY HAUL, INC; ) | |
| and EOG RESOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

**COME NOW,** Plaintiffs Justin and Trinity Lewis, by and through their undersigned

counsel, and hereby allege the following:

### JURISDICTION, VENUE, AND PARTIES

1.      Plaintiffs Justin Lewis and Trinity Lewis are husband and wife.

2.      Justin Lewis and Trinity Lewis are citizens of the state of Wyoming and reside in

Sheridan County, Wyoming.

3.      Defendant ENTREC Cranes & Heavy Haul, Inc. ("ENTREC") is a Texas

corporation whose principal place of business is located in North Dakota.

4.     ENTREC is subject to bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Texas.

5.     The bankruptcy court has granted relief from ENTREC's bankruptcy stay to permit the filing of this lawsuit.

6.     Defendant Legion Rig Services, LLC ("Legion") is a Delaware limited liability company whose principal place of business is in Colorado.

7.     Legion is subject to bankruptcy proceedings in the United States Bankruptcy Court for the District of Colorado.

8.     The bankruptcy court has granted relief from Legion's bankruptcy stay to permit the filing of this lawsuit.

9.     Defendant EOG Resources, Inc. ("EOG") is a Delaware corporation whose principal place of business is in Texas.

10.     This Court may exercise personal jurisdiction over the Defendants because the acts or omissions alleged in this Complaint arise from and are related to the Defendants' activities purposefully directed at Wyoming.

11.     On information and belief, Hewlett & Payne was the owner of rig H&P 520 (the "Rig") and EOG were the overseers, where the injury alleged in this Complaint occurred.

12.     On information and belief, Legion was a contractor for EOG retained to move the Rig on January 4, 2019.

13.     On information and belief, ENTREC was hired by Legion or EOG to provide crane services to move the Rig on January 4, 2019.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is in excess of Seventy-five Thousand Dollars ($75,000.00) exclusive of interests and costs.

15.     Pursuant to 28 U.S.C. § 1391(b) and (g), proper venue for this cause of action is the United States District Court for the District of Wyoming since the claim arose in the judicial district and because the acts and omissions complained of occurred within the District of Wyoming.

16.     Plaintiffs have complied with the jurisdictional requirements of W.S. § 27-14-105(b).  By serving the Director and Attorney General by certified mail, return receipt requested, with a copy of the complaint in this action.

## FACTS COMMON TO ALL CAUSES OF ACTION

17.     Plaintiffs reallege the facts set forth in paragraphs 1 through 16 of this Complaint as though fully set forth herein.

18.     On January 4, 2019, Justin Lewis was an employee of DCT Energy Services, LLC at the rig.

19.     The rig is located on Jenny Trail Road near Wright, Wyoming.

20.     The rig included a centrifuge mounted on a stand for the separation of fine and ultrafine solids from drilling fluid.

21.     EOG had hired DCT to assist with mudding operations at the rig site.

22.     EOG had also hired Legion to assist with the breakdown of certain rig components at the rig site.

23.     One of the tasks to be completed on January 4, 2019, was the breakdown of a centrifuge and centrifuge stand in order to move them offsite.

3

24.     EOG had a safety meeting early in the day on January 4, 2019, which Justin Lewis attended.  Neither ENTREC nor Legion had a representative present during that safety meeting.

25.     Legion hired ENTREC to provide and operate the crane necessary to assist with the breakdown.

26.     ENTREC did not attend the EOG safety meeting in the morning on January 4, 2019.

27.     Instead, ENTREC did not arrive on site until approximately 4:00 pm local time on January 4, 2019.

28.     On information and belief, the ENTREC crane crew did not conduct a safety meeting before beginning their work on the rig.

29.     A blind lift is a critical lift.  The Defendants conducted no pre-lift meeting.  The Defendants also did not perform a Job Safety Analysis signed by all persons present for the lift.

30.     The ENTREC crane crew did not participate in any safety meeting with the Legion and DCT employees who would be assisting with the breakdown of the centrifuge and centrifuge stand.

31.     On information and belief, the ENTREC crane crew was responsible for selecting a location to place the crane.

32.     ENTREC set up and moved the centrifuge stand behind the three-sided high wall where the crane operator couldn't see.

33.     The three-sided high wall made it impossible for ENTREC's crane operator to observe the work he was performing.

34.     ENTREC could have positioned the crane in such a position that the operator could observe the work.

4

35.    Instead, the ENTREC crane operator relied on the observations of a rigger/assistant who would communicate instructions via hand-held radio.

36.    On information and belief, communication via hand-held radio was not working properly, was dangerous and was not sufficient because the crane operator had to honk the crane's horn in order to get the rigger/assistant's attention. Legion had a supervisor on site and was responsible to assure that the rig move could be accomplished safely.

37.    Moreover, a Legion employee was required to give hand signals to the crane operator in order to place a centrifuge safely on the ground.

38.    At all pertinent times, Justin Lewis was a DCT employee on site. Justin Lewis' job duties at the time of the move involved using a tie line to guide the load and assist in the movement and placing of the centrifuge stand. Once the centrifuge was in place on the ground, the crane operator's rigger/assistant and a DCT employee hooked the centrifuge stand up to the crane.

39.    At all times pertinent to this matter, the Defendant entities retained, assumed and/or exercised control over the premises and all operations related to the movement of the centrifuge, the stand and all appurtenances, including but not limited to the duty to maintain and observe safe work practices.

40.    Justin Lewis relied upon ENTREC and Legion employees, and safety men of EOG Resources, Inc., to perform the work safely.

41.    Before the centrifuge stand could be loaded on a waiting trailer, the extended legs of the stand had to be collapsed down.

42.    Due to the position of the centrifuge stand the extended legs of the stand could not be collapsed down in its then present condition.

43.    Therefore, the crane operator lifted the stand and swung it out into a better position.

44.     In this position, Justin Lewis and other workers on site could knock out the pins holding the legs in their extended position so that the centrifuge stand could be lowered down and collapsed for transport.

45.     Justin Lewis and the other workers gave the all clear and the ENTREC crane operator, with the assistance of the ENTREC rigger/assistant, began lowering the centrifuge stand.

46.     While the ENTREC crane operator lowered the centrifuge stand, Justin Lewis noticed that a hinged platform extension to the stand's catwalk was extended out in a horizontal position.

47.     The hinged catwalk posed an unreasonable risk of injury or damage to the equipment and personnel involved in the move.  Failure to take immediate action to correct the situation would have exposed the operation to failure or damage.

48.     This hinged platform had to be folded up into a vertical position before the stand could be fully lowered.

49.     Justin Lewis therefore called for a stop of work and notified the rigger/assistant to have the crane operator stop lowering the stand.  In this case, the "stop work" was properly called by Justin Lewis in order to allow him to secure the catwalk platform.  A stop work order by Justin Lewis was appropriate and was within his authority.  When a "stop work" is called, all work must stop until the order is released by the person initiating the stop work.

50.     The rigger/assistant relayed this information to the crane operator.

51.     The crane operator stopped lowering the centrifuge stand in response to the stop work initiated by Justin Lewis. This means that the stop work order by Justin Lewis was received and implemented by the crane operator as a valid stop work order.

6

52.     All personnel on the site were chargeable with the knowledge that in order to secure the catwalk, Justin Lewis was going to have to put himself in a position that exposed him to unreasonable risk of injury, if operations began before he had returned to a position of safety and released the "stop work."

53.     When Justin Lewis called for a "stop work" to allow him to secure the catwalk, he reasonably expected that other people involved in the operation would stop further operations and would not begin moving the centrifuge stand until he had returned to a position of safety and released the stop work.

54.     Plaintiff Justin Lewis then climbed up a ladder and used his left arm to secure himself on the ladder and used his right arm to push the hinged platform into a vertical position.

55.     By calling for a stop of work, no further work was to be performed until Justin Lewis had finished moving the hinged platform, had climbed down from the ladder, and all personnel on site had given the all clear for work to resume.

56.     While Justin Lewis was still on the ladder with his left arm looped through the ladder to provide support, the crane began to lower the centrifuge stand without any warning to Justin Lewis and crushed his left forearm before he even had a chance to climb down the ladder to a position of safety.

57.     Justin Lewis had not given the all clear for work to resume.

58.     Justin Lewis immediately began to yell for the crane operator to stop lowering the centrifuge stand.

59.     Others on site also yelled several times for the crane operator to lift the centrifuge stand.

60.     The centrifuge stand continued in the drop and crushed the left arm of Justin Lewis. The weight of the load was so heavy that it caused massive injuries to the arm, nerves and muscles of his left forearm and hand.

61.     Finally, the crane operator began lifting the centrifuge stand back up, freeing Justin Lewis's arm.

62.     The ENTREC rigger apologized to Justin Lewis at the scene, stating that he was sorry and thought it was okay to continue dropping the load.  Upon information and belief, the rigger was removed from the site and was terminated by ENTREC.

63.     Justin Lewis's left forearm was crushed to the bone, requiring immediate medical attention.  In addition to nerve and muscle death, Justin Lewis suffered compartment syndrome and permanent damage to his muscles, ligaments, tendons and nerves.  He has required multiple surgeries that have caused extensive scarring that necessarily limited his ability to function below the elbow.  The most recent surgery was performed on or about May 13, 2021.  Justin Lewis has attended and continues to attend physical and occupational therapy in an effort to minimize the damage to his nerves, muscles and use of his left arm and hand.  His medical expenses are continuing and will continue for the foreseeable future.

**FIRST CAUSE OF ACTION**
**Negligence**
**Against ENTREC Cranes & Heavy Haul, Inc.**

64.     Plaintiffs reallege the facts set forth in paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65.     Defendant ENTREC owed a duty to Plaintiffs to exercise ordinary care under the circumstances to protect Justin Lewis from harm.

8

66.     Defendant ENTREC is vicariously liable for those acts and/or omissions of its officers, directors, employees, and agents that were the cause of Justin Lewis's injuries.

67.     Defendant ENTREC breached that duty by:

a.     Negligently placing the centrifuge stand behind a wall, causing the crane to have to work without visibility of the centrifuge stand, which was significantly more hazardous and which ENTREC knew or should have known was significantly more hazardous;

b.     Failing to ensure that the crane operator and the crane rigger/assistant had reliable means of communications, and recklessly proceeded with a blind lift when the hand-held radios that were being used that day were not working properly;

c.     Failing to train the crane operator and the crane rigger/assistant in the appropriate placement of a crane prior to work and appropriate means of communication when ideal placement is not possible.

d.     Failing to train the crane operator and rigger/assistant on the use of stop work authority and the conditions necessary for work to resume after stop work authority is used.

e.     Failing to immediately stop lowering the centrifuge stand on observing Justin Lewis's injuries.

f.     Failing to hold a required safety meeting and critical pre-lift meeting, and failing to perform a job safety assessment as required by industry standards and practice.

g.     Failing to follow its own safety rules and failing to conform its operations to industry standards, including but not limited to ASME B30 and Wyoming Department of Workforce Services Safety Rules and Regulations.

h.     Failing to properly maintain the equipment, as required by industry standards.

        i.       Failing to properly provide personnel to perform the job safely, including appropriate spotters, a site supervisor and lift director.

        j.       Such other acts or omissions as may become known through discovery.

68.    The above acts and omissions by ENTREC caused the centrifuge stand to be lowered while Justin Lewis's arm was still slung in the ladder and proximately caused the injuries to Justin Lewis and also the loss of consortium suffered by Trinity Lewis.

69.    Because of ENTREC'S conduct, Justin Lewis sustained severe physical injuries, and has incurred substantial damages as a result of those injuries, including but not limited to medical expenses, past, present and future lost income, disfigurement, disability, loss of enjoyment of life, pain and suffering, and other damages to be proven at trial.

70.    As a direct and proximate result of Legion's conduct, Trinity Lewis, wife of Justin Lewis, has suffered past and continues to suffer present and also future loss of future companionship, society and comfort of Justin Lewis, as well as such other damages as may be proven at trial.

## SECOND CAUSE OF ACTION
### Negligence
### Against Legion Rig Services, LLC

71.    Plaintiffs reallege the facts set forth in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72.    Defendant Legion owed a duty to Plaintiffs to exercise ordinary care under the circumstances to protect Justin Lewis from harm.

73.    Defendant Legion is vicariously liable for the acts and/or omissions of its officers, directors, employees, agents, and representatives in the course of their duties that were a cause of Justin Lewis's injuries.

74.     Defendant Legion is also vicariously liable for the negligent acts and/or omissions of its subcontractor, ENTREC.

75.     Defendant Legion breached that duty by:

a.      Failing to properly supervise ENTREC and its employees during the placement and operation of the crane.

b.      Failing to ensure that ENTREC safely positioned the crane so that its operator could observe the work he was performing.

c.      Failing to ensure that ENTREC had communication systems in place that would prevent the lowering of the centrifuge stand while a person on site was at risk of injury.

d.      Failing to promptly communicate to ENTREC the need to lift the centrifuge stand off of Justin Lewis's arm.

e.      Failing to communicate to ENTREC the need to attend a safety meeting with all staff on site to ensure the safe completion of the job.

f.      Failing to properly supervise its subcontractor, ENTREC.

g.      Failing to properly train its employees.

h.      Failing to follow their own policies and procedures.

i.      Failing to conform their conduct, acts and omissions to industry standards, including but not limited to ASME B30 and Wyoming Department of Workforce Services Safety Rules and Regulations.

j.      Failing to assure the use of properly maintained equipment, as required by industry standards.

k.      Failing to properly provide adequate personnel to perform the job safely.

l.      Such other acts or omissions as may become known through discovery.

76.     The above acts and omissions by Legion proximately caused the centrifuge stand to be lowered while Justin Lewis's arm was still slung in the ladder and proximately caused the injuries due to the length of time the stand crushed Justin Lewis's arm.

77.     Because of Legion's conduct, Justin Lewis sustained severe physical injuries, and has incurred substantial damages as a result of those injuries, including but not limited to medical expenses, past, present and future lost income, disfigurement, disability, loss of enjoyment of life, pain and suffering, and other damages to be proven at trial.

78.     As a result of Legion's conduct, Trinity Lewis has suffered and will in the future suffer loss of probable future companionship, society and comfort of Justin Lewis, as well as such other damages as may be proven at trial.

**THIRD CAUSE OF ACTON**
**Negligence**
**Against EOG Resources, Inc.**

79.     Plaintiffs reallege the facts set forth in paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.     Defendant EOG owed a duty to Plaintiffs to exercise ordinary care under the circumstances to protect Justin Lewis from harm.

81.     Upon information and belief, EOG assumed affirmative safety duties for the safety of all employees and independent contractors at the rig, including but not limited to Justin Lewis.

82.     Defendant EOG breached those safety duties and its duty of ordinary care by:

a.     Failing to ensure that all independent contractors performed their required tasks in a safe manner.

b.     Failing to ensure that all independent contractors engaged in safety meetings to recognize, communicate, and mitigate risks.

c.     Failing to ensure that Legion hired a crane operator that understood the dangers inherent in oilfield crane operations and that understood the requirements to perform that job safely.

d.     Such other acts or omissions by EOG that may become known through discovery.

83.     The above acts and omissions caused Legion to bring a subcontractor onto the rig site who failed to safely perform their duties – leading to substantial injuries to Justin Lewis.

84.     Because of EOG's conduct, Justin Lewis sustained severe physical injuries, and has incurred substantial damages as a result of those injuries, including but not limited to medical expenses, past, present and future lost income, disfigurement, disability, loss of enjoyment of life, pain and suffering, and other damages to be proven at trial.

85.     As a result of the conduct of Defendant EOG, Trinity Lewis has suffered and will in the future suffer loss of probable future companionship, society and comfort of Justin Lewis. Due to the serious incapacity suffered by her husband, Trinity Lewis had to assume the duties of the ranching and cattle operation.

## DAMAGES

86.     Plaintiffs reallege the facts set forth in paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87.     Justin Lewis has suffered severe physical injuries requiring extensive past and future medical payment and he is therefore entitled to damages for past and future medical expenses.

88.     Justin Lewis's physical injuries have negatively impacted his ability to earn a living, and he is therefore entitled to damages for past, present and future lost income, loss of earning capacity and other economic losses.

89.     As a result of his physical injuries, Justin Lewis has suffered disfigurement, disability, loss of enjoyment of life and extensive pain and suffering, for which he is entitled to damages in an amount to be proven at trial.

90.     Trinity Lewis, as Justin Lewis's wife, has lost and will lose substantial future companionship, society, and comfort from Justin Lewis as a result of his injuries.

91.     Justin Lewis and Trinity Lewis suffered additional economic and other damages to be proven at trial.

**WHEREFORE,** Plaintiffs Justin Lewis and Trinity Lewis request that this Court grant judgment against Defendants for economic and non-economic damages in an amount consistent with the allegations contained herein and to be proven at trial, and judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

**COMES NOW** the Plaintiffs, Justin Lewis and Trinity Lewis, by and through their attorneys, Sundahl, Powers, Kapp & Martin, L.L.C., and pursuant to Federal Rules of Civil Procedure 38 and 39, request this matter be tried to a jury and submits the requisite fee with this request.

14

DATED this _____ day of _____, 2021.

John A. Sundahl, WSB# 5-1244
Patrick M. Brady, WSB# 7-5494
Sundahl, Powers, Kapp & Martin, L.L.C.
1725 Carey Avenue
P.O. Box 328
Cheyenne, WY  82003-0328
(307)632-6421
(307)632-7216 facsimile
jsundahl@spkm.org
pbrady@spkm.org
*Attorneys for Plaintiff Justin Lewis and Trinity Lewis*