

**FILED**

*10:28 am, 6/21/23*

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

JUSTIN LEWIS and TRINITY LEWIS,

        Plaintiffs,

vs.

LEGION RIG SERVICES, LLC;
ENTREC CRANES AND HEAVY
HAUL, INC., and HELMERICH &
PAYNE INTERNATIONAL DRILLING
COMPANY,

        Defendants.

Case No.  21-CV-160-NDF

---

### ORDER GRANTING LEGION RIG SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on the Motion for Summary Judgment by Defendant Legion Rig Services, LLC ("Legion"). ECF 124; ECF 125. Plaintiffs have responded. ECF 129. Defendant Legion submitted additional facts and legal authorities. ECF 135.[1] The parties presented their oral arguments on June 15, 2023.

Following completion of an oilwell, Defendant Legion was employed as an independent contractor to move the drilling rig to a new location.  One of Legion's tasks was to break down and load a centrifuge and centrifuge stand owned by DCT Energy Services ("DCT").[2]  Legion employed Defendant Entrec Cranes and Heavy Haul, Inc.

---

[1] The Court does not consider Legion's additional facts and legal authorities for resolution of the pending motion.
[2] DCT was another independent contractor employed by the well operator to provide solids control and waste management services during drilling.

(Entrec) as an independent contractor to provide the necessary crane services for the rig move. Unfortunately, Plaintiff Justin Lewis, a DCT employee, was seriously injured when the centrifuge stand was lowered by the crane operator into the centrifuge area when Mr. Lewis was in the area securing a catwalk.

Plaintiffs sued Legion based on one of two exceptions[3] to the general rule that the employer of an independent contractor is not liable for harm caused to another by the actions or omissions of the contractor or its employees. Viewing the evidence and inferences in the light most favorable to Plaintiffs, the Court concludes the exception does not apply because there is insufficient evidence on which a jury could reasonably find that Legion retained control over the operative detail of any part of Entrec's crane services. Consequently, Plaintiffs have failed to show a legal duty owed by Legion to Plaintiffs. Therefore, Legion's motion for summary judgment is GRANTED.

## I.  Facts

Based on the submissions and the record, the Court finds the following facts in the light most favorable to Plaintiffs:

The present dispute arises from an accident that occurred on the H&P 520 rig near Wright, Wyoming on January 4, 2019. ECF 129, p. 2. After the well was completed, H&P employed Legion to break down the H&P rig and associated equipment and transport it to its next location. *Id*. Part of the equipment associated with the rig was a centrifuge and

---

[3] Plaintiffs concede that Legion is not liable for the actions of its subcontractor Entrec under a vicarious liability theory but argue that Legion is liable under a negligence theory. ECF 129, p. 16; ECF 40, p. 11.

centrifuge stand, both of which were owned by DCT, who employed Mr. Lewis.  ECF 129, pp. 2 & 27-28; Pls.' Ex. 4. 24:20-25:1.

To move the rig, the centrifuge and centrifuge stand need to be loaded onto trucks for transport. ECF 129, p. 2. Legion retained Entrec to provide the necessary crane services. *Id*. at 2-3.

Legion's Health, Safety, and Environment (HSE) Manual ("Manual") states that Legion personnel should be involved in all aspects of planning a rig move and specifically articulates the duties of Legion's truck pusher on site, Eric Tornquist. Pls.' Ex. 6. 519-521, ECF 129, p. 139-141; Pls.' Ex. 12. ECF 129, p. 183. The truck pusher maintains "overall responsibility for all Crane Operators, Equipment Operators, Transport Operators, Riggers, Spotters, Swampers, and other subcontract personnel working under their direction, ensuring that each has been deemed competent for their assigned work activities and comply with governing HSE policy at all times." Pls.' Ex. 6. 519. It is the truck pusher's job to "assign competent riggers/signal persons for moving and lifting of loads." *Id*. at 520. Before a rig move, the Manual requires the truck pusher to perform pre-rig move planning and discuss any hazards with all affected personnel. *Id*. at 519.

The Manual additionally states that, for critical lifts, the truck pusher serves as lift leader. Pls.' Ex. 6. 520. The Manual defines a critical lift to include "blind lifts," which are lifts where the crane operator cannot see the load they are lifting. *Id*.; Pls.' Ex. 7. 27:9-11, ECF 129, p. 151.

3

Finally, the Manual states that truck pushers are also responsible for facilitating the job safety analysis ("JSA"). Pls.' Ex. 6. 618. The Manual defines a JSA as a hazard identification tool used to ensure that tasks are analyzed and risk reduction measures are in place to reduce the risk of injury or equipment damage. *Id*. at 617. JSAs explain the sequence of basic job steps, identify possible accidents and hazards, develop control measures for risk management, and identify the individual assigned to manage each control measure. *Id*. at 618. JSAs apply to all of Legion's subsidiary companies and contractors. *Id*. at 617. JSAs are required for all "safety critical tasks," including but not limited to "jobs involving multiple organizations or simultaneous operations." *Id*. at 618. JSAs for safety critical tasks shall be written and signed by all affected employees to acknowledge their commitment to following the established procedure. *Id*. at 617-618.

The contract between Defendant Legion and Entrec is not in the record and there is nothing in the record indicating that Entrec was aware of Legion's HSE Manual. Def.'s Ex. E. 143:11-15, ECF 124, p. 42.  Entrec's employee Veo testified that he had never seen the Manual before he saw it during his deposition. *Id.* at 143:14-15.

Plaintiffs point out that no written JSA has been produced in discovery and DCT employees do not recall participating in a Legion JSA. ECF 129, p. 6; Pls.' Ex. 11. 101:13- 18, ECF 129, p. 181. Justin Lewis testified that Legion was not at a safety meeting on the day of the accident. Pls.' Ex. 4. 190:17-19, ECF 129, p. 40. Defendant Legion does not specifically address the JSA, but provides evidence that Eric Tornquist, Legion's truck

pusher and site supervisor, performed a pre-move assessment three days prior to the accident. Def.'s Ex. A. 0005, ECF 124, p. 32; Guerena Dep. 40:22-25.

On January 4, 2019, Entrec arrived at the well at approximately 2:00 pm. Pls.' Ex. 8. 000031, ECF 129, p. 156. Two Entrec employees were present: Kyle Veo and Mitch Bockenkamp. Pls.' Ex. 9. 56:8-9, ECF 129, p. 164. Veo was the crane operator and Bockenkamp was the crane rigger. Bockenkamp testified that he does not remember if he ever performed a blind lift before the day of the accident, and he does not remember receiving any training on blind lifts. Pls.' Ex. 10. 71:14-15, 44:7-9, ECF 129, p. 174, 172. Bockenkamp said in Legion's investigation report that the "centrifuge guys" wanted to leave, so Tornquist confirmed with the Entrec employees that they could begin breaking down the centrifuge stand. Def.'s Ex. A. 0007.

At approximately 4:00pm, Veo positioned his crane where a tank was between the crane and the centrifuge stand, creating a blind lift. Pls.' Ex. 8. 000031.; Pls.' Ex. 7. 28:14- 16, 25:11-13. Tornquist wrote that after Entrec lifted the centrifuge off its stand, he "told [the] crane [its] next step was to fly stand out and lower [the stand] then load [the] stand on [a] truck that was waiting on standby." Pls' Ex. 12. Then Tornquist returned to the mud tanks he was previously rigging down as part of the rig move. Tornquist did not witness Lewis being injured. *Id*.

While Tornquist was at the mud tanks, Lewis and another DCT employee began knocking the retaining pins out of the centrifuge stand legs so the stand could be telescoped down. Pls.' Ex. 8. 000031. Once the pins were knocked out, Bockenkamp, who was serving

5

as Veo's spotter, told Veo over the radio that he could lower the stand. Pls.' Ex. 10. 69:6. The sun was going down and Veo, Entrec's crane operator, later testified that it would be unusual for a crane operator to conduct a rig move after daylight. Pls.' Ex. 11. 47:12; Pls.' Ex. 9. 159:21-160:4. The workers were in a hurry to complete the job and while the stand was lowering, Lewis noticed that a catwalk had not been secured and would be damaged if the load continued to lower. Def.'s Ex. A. 0005; Pls.' Ex. 4. 83:6-11. Lewis signaled to Bockenkamp to stop the crane. *Id*. at 227:10-23. The crane stopped, and Lewis went into the centrifuge area to secure the catwalk. *Id*. at 90:15-20. While Lewis was securing the catwalk, the crane resumed lowering and Lewis's arm was crushed between two parts of the stand. Pls.' Ex. 11. 24:10, 25:10.

## II.  Applicable Legal Standards

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Mata v. Anderson*, 635 F.3d 1250, 1252 (10th Cir. 2011). In determining whether summary judgment is appropriate, the Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1269 (10th Cir. 2011). "However, to defeat summary judgment, a plaintiff must support the claim with more than conjecture and speculation." *Cunningham v. Jackson Hole Mt. Resort Corp.*, 15-cv-07, 2016 U.S. Dist. LEXIS 190233, 4 (D. Wyo. Feb. 17, 2016). To survive a motion for summary judgment, there must be more than "[t]he mere existence of a scintilla of evidence

in support of the [nonmoving party's] position … there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

There must be no genuine issue of material fact. *Anderson*, 477 U.S. 242 at 248. A fact is material if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002).

Turning next to the law concerning liability of an employer of an independent contractor, the Wyoming Supreme Court has adopted Restatement (Second) of Torts § 409, which provides, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the independent contractor or his servants." *See Jones v. Chevron*, 718 P.2d 890, 898 (Wyo. 1986). This general rule applies unless the plaintiff can establish liability under one of two exceptions. The second exception is at issue here, which addresses claims of direct negligence pursuant to Restatement (Second) of Torts § 414. *See, Merit Energy Co., LLC v. Horr*, 366 P.3d 489 (Wyo. 2016). "In order to recover in such a direct negligence action, the plaintiff must show a legal duty owed by

the defendant to the plaintiff, a breach of that duty, causation, and damages." *Id.* at 494.

Section 414 states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id*. (quoting Restatement (Second) of Torts § 414.

### III.   Discussion

Legion argues there is no basis for a direct negligence claim against Legion because no Legion employee was involved in the actions or inactions leading to Mr. Lewis's injury. ECF 125, p. 12.Plaintiffs argue Legion retained substantial control over Entrec's work and Legion's failure to exercise that control reasonably caused Lewis's injuries. ECF 129, pp. 16, 15.

The Wyoming Supreme Court relies on the comments to Section 414 for guidance, which assigns liability if the employer of an independent contractor retains control of any operative detail of the work. *Merit*, 366 P.3d at 494 (quoting Restatement (Second) of Torts § 414 cmt. a). The employer must have retained the right to control some aspect of the work, and supervision of the work, such that the contractor is not entirely free to do the work in their own way. The threshold of control required to trigger a duty under Section 414 is lower than that required for the master servant relationship. *Id*. at 495 (quoting Restatement (Second) of Torts § 414 cmt. a). However, merely retaining the right to "order the work [be] stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe

alterations and deviations" is not sufficient. *Id*. (quoting Restatement (Second) of Torts § 414 cmt. c).

The Wyoming Supreme Court's analysis in *Merit* is instructive.  More specifically, the Court found that Merit sufficiently controlled its independent contractor because Merit controlled the pressure of its well,  retained control over the equipment used to control the pressure, had expertise in the management of well pressure, retained authority to "kill" the well - which it did not direct to be done, and Merit's employee told the contractor to replace the component when the pipe became stuck without checking well pressure or the tubing stuck in the wellhead. *Id*. at 499. The Court held that this evidence was "sufficient to permit more than one reasonable inference as to whether there was sufficient control to impose a duty." *Id.*

This case differs from the facts from *Merit* because Legion lacks such control over the operative detail of Entrec's crane work. Plaintiffs rely heavily on the written note from Legion's truck pusher, Tornquist, to establish that Legion controlled Entrec's crane operation:

> While rigging down mud equipment, [I] helped and watched crane fly center fuge [sic] off stand & told crane next step was to fly stand out and lower [the stand] than [sic] load stand on truck that was waiting on standby[.] [A]fter telling him to do that I went over to the mud tank I was previously working on rigging down & setting out & all of a sudden herd [sic] someone yelling & saying come up.  When I turned & looked over to the stand saw mud guy was caught in between ladder rungs & yelled at crane to come up.

Pls' Ex. 12.

Plaintiffs further argue that Legion controlled the manner of work because the lift was performed at the end of daylight. ECF 129, p. 19; Pls.' Ex. 9. 159:21-160:4. The rig move started at 4:00 pm and the sun was starting to go down at the time of the accident. Pls.' Ex. 8. 000031; Pls.' Ex. 11. 47:12. Veo, Entrec's crane operator, testified that it would be unusual for a crane operator to conduct a rig move after daylight. Pls.' Ex. 9. 159:21- 160:4.

Finally, the Incident Report filed by Legion identifies Tornquist as the supervisor responsible for discussing the details of rig moves at daily safety meetings. Def.'s Ex. A. 0005; Guerena Dep. 22:15-23:4. Given Tornquist's position, Plaintiffs rely on Legion's Manual to argue Tornquist was responsible for the blind lift conducted by Entrec's personnel working under Legion's direction, which would include the responsibility to develop and facilitate a JSA and ensure personnel have adequate training and experience to maintain a safe working environment.  ECF. 129, p. 3; Pls.' Ex. 6. 519; Pls.' Ex. 7. 25:11-13. Based on depositions taken by Plaintiffs' counsel, Tornquist did not perform a JSA or ensure that involved personnel had proper training. Pls.' Ex 11. 101:16; Pls.' Ex. 4. 47:13.

Turning first to Tornquist's written statement, this statement to Entrec's personnel about the "next step" does not constitute <u>controlling the</u> <u>operative detail</u> of the crane work. This is true even considering that the truck was waiting on standby late in the workday. Entrec's personnel could choose to delay the stand lift in light of the time of day or the obstructed view.  Both the time of day and the obstructed view were circumstance created

10

by Entrec, not Legion or its personnel, by Entrec's late arrival and its decision to place the crane at the location.  Additionally, Entrec's personnel were entirely free to decide how, when, and where to lower the stand as Tornquist had left the area to work on the mud tank. This conclusion is further supported by Entrec's crane operator, Veo, who testified that he (Veo) merely coordinates with the truck pusher about where to put the crane for a lift, but that Veo makes the ultimate decision. Veo Dep. 152:22. Veo also testified that Tornquist did not tell him how to do his job. *Id*. at 141:20-23, 142:19-22.

Turning to evidence regarding Legion's Manual, in *Abraham v. Andrews Trucking Co*. the Wyoming Supreme Court held that the mere existence of a safety manual is insufficient to establish that an employer had assumed affirmative safety duties. 893 P.2d 1156, 1157-1158 (Wyo. 1995). The Court explained that the employer must actually exercise those duties for a duty of care to attach. *Id*. In this casethere is no contract in the record showing that the Manual's terms were incorporated into any agreement between Legion and Entrec, or anything showing that Entrec was even aware of Legion's Manual. *See* Veo Dep. 143:11-15.

Moreover, despite Defendants' acknowledgment that Tornquist was a supervisor and someone who attended safety meetings, there is nothing in the record about those meetings to indicate that Tornquist exercised the control prescribed by the Manual or acted as anything more than a participant who could merely "order the work [be] stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and

deviations." Def.'s Ex. A. 0005. In short, while the Manual may ultimately be relevant to the question whether Legion breached a duty of care, it alone does not create a duty of care or provide supporting evidence or inference to show that Legion retained or exercised a right of control of the operative details of the crane work.

For all these reasons, the Court concludes that the evidence is insufficient as a matter of law to show a legal duty owed by Legion to Plaintiffs to support their direct negligence claim against Legion.   Accordingly, summary judgment on Plaintiffs' negligence claim against Legion is GRANTED.

### IV.  Conclusion

For the reasons above, the motion for summary judgment by Legion Rig Services, LLC, (ECF 124) is GRANTED; and

Because the Court did not consider Legion's additional facts and legal authorities for resolution of the pending motion, Plaintiffs' Motion to Strike (ECF 136) is DENIED AS MOOT.

SO ORDERED this 21st day of June, 2023.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE